Anton Till, Jr., Plaintiff-Appellee, v. Emily Kara, individually and d/b/a Hide-A-Way Tavern, and Jerry C. Kara, Defendants-Appellants.

Gen. No. 11,283.

Second District, Second Division.

September 28, 1959.

Released for publication October 15, 1959.

Stickgold and Mullin, of Chicago (Gerald B. Mullin, of counsel) for defendants-appellants.

C. Russell Allen, of Woodstock, and Snyder, Clarke, Dalziel, Holmquist and Johnson, of Waukegan (Gerald C. Snyder, of counsel) for plaintiff-appellee.

JUSTICE SOLFISBURG delivered the opinion of the court.

On November 26, 1957, the plaintiff filed his complaint under Section 14 of Article VI of the Liquor Control Act (Ill. Rev. Stats. 1957, Chap. 43, par. 135) against Emily Kara, Jerry C. Kara and Carl Cavitt, to recover damages for injuries sustained as a result of an automobile collision. Cavitt was alleged to have become intoxicated from liquor obtained in a tavern operated by Emily Kara, located on premises owned by Emily Kara and Jerry C. Kara. All the defendants were served with process on December 1, 1957. The defendant Cavitt failed to enter his appearance or to plead to the complaint and a default order and default judgment were entered against him; no question has been raised concerning the judgment by default against defendant Cavitt.

Two attorneys employed by defendants Emily Kara and Jerry C. Kara entered their appearance as attorneys for these defendants on January 7, 1958, secured an extension of time within which to plead to the plaintiff's complaint, and in due course filed an answer to the complaint on January 27, 1958, denying the material allegations of the complaint. On March 17, 1958, upon motion of the plaintiff and after proper

notice, the court ordered the cause placed on the June A.D. 1958 trial call. At the same time the plaintiff directed certain interrogatories in writing to the attorneys for the defendants Kara. On April 9, 1958, or approximately one month after the case was placed upon the June 1958 trial call, the two attorneys representing the defendants Kara served notices in person upon counsel for plaintiff and by registered mail, return receipt requested, upon Emily Kara and Jerry C. Kara that on April 14, 1958, at the opening of court in the forenoon they would appear before the presiding judge of the Circuit Court of Lake County and "then and there move for leave to file their withdrawal of appearance as attorneys of record" in this cause "for your failure to cooperate with or otherwise assist the undersigned [attorneys] in the preparation of your defense, at which time and place you may appear if you see fit so to do. You and each of you are further notified that you should file a special appearance or otherwise furnish the Clerk of the Court with a Lake County, Illinois, address to which notices may be served upon you. (Signatures)."

Thereafter, on April 14, 1958, the two attorneys by leave of court filed their withdrawal of appearance in accordance with the notices previously served. The defendants Emily Kara and Jerry C. Kara filed no appearance nor did any attorney on their behalf. On June 17, 1958, when the case was called for trial on the regular call of the June 1958 jury cases, neither the defendants nor anyone on their behalf appeared, whereupon the plaintiff waived his jury demand, and the cause was submitted to the court for trial without a jury. The court entered a judgment order finding the defendants and each of them guilty, assessed plaintiff's damages in the sum of $15,000, and ordered that plaintiff have judgment and execution for that sum plus costs. Execution was issued on August 15, 1958,

and served upon the defendants on August 18, 1958. On August 21, 1958, the defendants Kara, by one of the attorneys who had previously represented them in the case, served notice on plaintiff's counsel that they would appear in court on August 25, 1958, and present a petition to vacate the judgment rendered on June 17, 1958, and for leave to appear and defend the action. The court granted defendants leave to file additional affidavits and supporting suggestions and plaintiff leave to file counteraffidavits, briefs, and an answer to suggestions, after consideration of which the court entered an order on October 17, 1958, denying the petition to vacate the judgment and confirming the judgment entered on June 17, 1958. The defendants subsequently, by leave of court, moved the trial court for a rehearing on their prior petition to vacate the judgment, and this latter motion was denied on December 1, 1958. This appeal by defendants-appellants followed.

The sole question raised by defendants-appellants before this court is whether by their affidavits they showed not only a meritorious defense but also due diligence in preserving their rights to entitle them to relief from the default judgment.

The affidavit of Gerald B. Mullin, attorney for the defendants, filed in support of their motion to set aside the default judgment, recited that about December 15, 1957, Jerry C. Kara, defendant, consulted him with reference to this case and advised him he had been served with a summons; that Kara was uncertain whether a dramshop insurance policy was in force to indemnify him from liability; that affiant and an additional attorney were retained by Kara and filed an answer to the complaint; that in March, 1958, Jerry C. Kara advised affiant that he had spoken with his insurance broker, that there was an insurance company who would employ counsel to defend this

action and that affiant's services were no longer required; that affiant and the additional attorney thereupon withdrew their appearance for the defendants; that on August 18, 1958, the defendant Kara again consulted affiant in regard to this case and advised him that execution had been served upon him; that after two days of investigation of the facts, a notice of motion to vacate the judgment was served by affiant.

An affidavit by the defendant, Jerry C. Kara, stated that on October 24, 1957, the date on which the defendant Cavitt was alleged in the complaint to have purchased liquor from the Kara tavern, affiant and his wife were the owners of a tavern known as the Hide-A-Way Tavern but that no person could have procured alcoholic beverages at said tavern on that date because of the fact the tavern was not open for business; that accordingly the defendants have a good defense to the merits of the plaintiff's complaint. The affidavit of Jerry C. Kara further stated that he was advised by his insurance broker that there was an insurance policy indemnifying him for violation of the dramshop laws in force and effect; that he was further advised that such insurance company would undertake the defense of this case and therefore he advised his lawyer to withdraw from the case; that the first notice he received of the judgment was on August 18, 1958, when a writ of execution was served on him at which time he consulted Gerald B. Mullin, his attorney, who immediately took steps to open the judgment. The affidavit of the defendant Emily O. Kara, wife of Jerry C. Kara, repeated the same statements found in the affidavit of her husband. The record also contains an affidavit by the defendant, Carl Cavitt, to the effect that he purchased no alcoholic beverage of any kind at the Hide-A-Way Tavern on October 24, 1957, the date on which he was alleged in the com-

plaint to have purchased alcoholic liquor from the tavern of the defendants Kara.

The petition of defendants-appellants in this case was filed pursuant to Section 72 of the Civil Practice Act (Ill. Rev. Stats. 1957, Chap. 110, Par. 72), which abolishes the writ of error coram nobis, coram vobis, writs of audita querela, bills of review and bills in the nature of bills of review, and provides "that all relief heretofore obtainable and the grounds for said relief heretofore available, either at law or in equity, whether by any of the foregoing remedies or otherwise, shall be available in every case by proceedings" under said section.

The defendants in their briefs and arguments state that their petition is addressed to the court's sound discretion and ask the court to exercise its discretion "to prevent injury and to further justice." It is defendants' position that their neglect was excusable and that if there was any negligence or fault here it was the negligence of the insurance broker which should not be attributed to the defendants.

The scope and purpose of the statutory petition substituted for the common law writ of error coram nobis was outlined by the Supreme Court in Ellman v. De Ruiter, 412 Ill. 285, 291, where the court stated:

"While it has been held that the essentials of procedure remain the same despite the abolition of the writ, (Mitchell v. King, 187 Ill. 452,) the use of the motion has not been restricted to the narrow confines of its common-law antecedent. Rather, courts have encouraged the development of the statutory equivalent and permitted its use in new situations wherever such was consonant with the history of the common-law writ. For example, although insanity does not find express mention as a ground for the writ at common law, it has been given recognition in Illinois. (Consolidated Coal Co. v. Oeltjen, 189 Ill. 85.) Simi-

507

larly, common-law treatises do not mention fraud or excusable mistake as sustaining a writ of error coram nobis, but such grounds have been declared sufficient to support the equivalent motion in the modern practice in this State where the fraud or mistake has the effect of preventing the litigant from making his defense. (McKiernan v. Taylor & Lynch Cartage Co. 263 Ill. App. 657; Smyth v. Fargo, 307 Ill. 300.) Further, we find that the motion has been used extensively as a procedural device to prevent injustice by making possible the vacation of judgments entered without notice to a party where the circumstances were such as to require specific notice. (Jacobson v. Ashkinaze, 337 Ill. 141.) Varying rules of court and factual situations have caused some fluctuations in this latter use of the motion as may be seen from an examination of the cases, among which are Cramer v. Illinois Commercial Men's Ass'n., 260 Ill. 516; Straus v. Biesen, 242 Ill. App. 370; Rendorf v. Frye, 250 Ill. App. 122, and Swiercz v. Nalepka, 259 Ill. App. 262."

The Supreme Court in Miller v. Barto, 247 Ill. 104, 108, with reference to equitable relief being granted against a judgment obtained by fraud, accident or mistake, pointed out:

"Courts of equity have so often granted relief against judgments obtained by fraud, accident or mistake, where there has been no negligence on the part of a defendant, that there can be no question of power or jurisdiction to afford a remedy in such a case. If it is against conscience to execute a judgment and the defendant was prevented from making his defense by fraud or accident unmixed with any fault or negligence in himself or his agents, and the rights of third parties have not intervened, equity will relieve against the wrong. (Hilt v. Heimberger, 235 Ill. 235.) A court of equity, however, will not give ear to one who merely asks it to relieve him from the conse-

quences of his own negligence or that of his agents. A court of equity is only moved to action by diligence, and does not interpose to protect one who has not exercised proper diligence to protect his own interests and to make a defense which was available to him in a court of law."

██ Thus, it is well settled by the decisions in this state that not only must the defendant in such a case show a meritorious defense but that in addition his affidavits must show due diligence, Nitsche v. Chicago, 280 Ill. 268; Citizens' Sav. Bank & Trust Co. v. Chicago, 215 Ill. 174. A showing of a meritorious defense alone is not sufficient, Barrett v. Queen City Cycle Co., 179 Ill. 68.

██ Section 72 of the Practice Act is not intended to relieve a defendant from the consequences of his own negligence. Several comparatively recent decisions dealing with the subject of "due diligence" have been concerned with a party's reliance on another to furnish a defense to an action. The most recent of these decisions called to our attention is Chmielewski v. Marich, 350 Ill. App. 379, affirmed 2 Ill.2d 568. There the defendant recited in his affidavit in support of his petition that he delivered summons to his insurance agent, who assured him the matter would be properly taken care of by the insurance company, but defendant failed to state in his affidavit that he made any inquiry between the time of the delivery of the summons to the agent and discovery of the entry of the judgment by default. In Gustafson v. Lundquist, 334 Ill. App. 287, defendants' affidavits stated that the defendant, pursuant to instructions by his insurance adjuster, sent summons to the adjuster's office, that the adjuster was sick when summons was received and that inexperienced help in the adjuster's office merely filed the summons without doing more. In the case of Wagner v. Sulka, 336 Ill. App. 101,

509

defendants upon being served with summons mailed the same to the broker from whom defendants purchased their insurance and assumed that a defense of the action in their behalf would be undertaken by the insurer, but made no further inquiry. In Bonn v. Arth, 331 Ill. App. 321, the defendant upon being served with summons turned it over to her husband for delivery by him to her insurance agent, but the husband delivered the summons to a certain named person not connected with the insurance company relying upon the latter to deliver summons to the insurance agent. In each of the cited cases the reviewing tribunal held that the defendants' affidavit was not sufficient, that defendants' failure to enter an appearance in each of these cases was not an excusable mistake but rather that the defendants had failed to exercise the kind of diligence required in such a situation. See also: Bernier v. Schaefer, 11 Ill.2d 525, 530. From the facts set forth in the affidavits in support of defendants' petition, we are likewise drawn to the conclusion that the defendants-appellants herein were not diligent when they followed the advice of some unidentified insurance broker instead of obeying the specific command contained in the summons which was served upon them as provided by law and their attorneys' notice sent by registered mail, return receipt requested, advising them of the prospective withdrawal of these attorneys and the necessity for filing an appearance with the clerk of the court. The defendants attempt to distinguish the case of Gustafson v. Lundquist, 334 Ill. App. 287, by saying that in that case there existed an agency relationship between a broker and the insured defendant and there was a valid subsisting insurance policy in effect so that ultimately the insurer would be required to respond in damages. In the instant case the record does not make clear what the fact was with reference to the presence of insurance

coverage, but be that as it may, we believe that the defendants misconceive the basis of the decision in the Gustafson case. The court based its decision there not upon any theory of agency but upon the fact that the defendant failed to exercise the diligence required of him when he followed the advice of the insurance adjuster without making any further inquiry to ascertain if a defense was being furnished him. In our view, the Gustafson case and the Chmielewski case are as closely in point on their facts to the instant case as one might reasonably expect to find. Unlike the defendants in those cases, who did not employ legal counsel, the defendants in the present case hired their own attorney to represent them and then later requested their attorney to discontinue representing them and relied upon the representations of some insurance broker that their insurance company would defend this case in their behalf. Some two months elapsed between the withdrawal of their personal attorney and the entry of the judgment order by default. During that two months period the defendants made no inquiry as to whether or not their defense file had reached their insurance company or whether their insurer was doing anything to defend them in their case. Defendants and their personal attorney had known since March 17, 1958, that this case was on the jury call for the following June. The fact that no inquiry was made of the defendants as to the facts upon which a defense was to be predicated should also have placed them on notice that no defense was in preparation for them by any insurance company. While the trend of judicial decision may be, as defendants contend, to determine suits upon their merits and according to the substantive rights of the parties, when a party is sued and process duly issued and regularly served as provided by law and orderly procedure and practice is observed, a party must be gov-

erned by the law and rules of practice and must present his defense if he desires to contest the demand of the plaintiff for judgment, Bernier v. Schaefer, 11 Ill.2d 525, Marnik v. Cusack, 317 Ill. 362. A motion of the kind here presented, seeking to set aside a final judgment of a court having jurisdiction of the parties and the subject matter, is one of serious import and if treated lightly, threatens the stability of our courts, Conrad v. Camphouse, 230 Ill. App. 598.

Defendants make no claim that their attorney or attorneys were negligent, and apparently their withdrawal prior to any entry of appearance by other counsel for defendants was done at the express instance and request of defendants. There is no contention that the plaintiff or his attorneys prevented defendants from making a defense, through fraud or otherwise.

We are not, of course, concerned here with the rights of the defendants-appellants, the broker, or the insurer as among themselves. The only question is whether as between the defendants, Emily Kara and Jerry C. Kara, and the plaintiff, defendants' failure to appear and defend was excusable. It is our conclusion that it was not.

The judgment of the Circuit Court of Lake County, therefore, is affirmed.

Affirmed.

WRIGHT, P. J. and CROW, J., concur.