Ruth Stehman, Plaintiff-Appellee, v. Reichhold Chemicals, Inc., a Corporation, and Ronald F. Robinson, Defendants.
Appeal of Reichhold Chemicals, Inc., a Corporation, Defendant-Appellant.

**Gen. No. 49,887.**

First District, Fourth Division.

March 17, 1965.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (Max E. Wildman, Cornelius J. Harrington, Jr., and Alan H. Swanson, of counsel), for appellant.

Frank J. Mackey, Jr., of Chicago, for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

This is an appeal from a default order and judgment for $25,000 entered upon a jury verdict after an ex parte hearing, and the order denying defendant's petition to vacate the default and the judgment.

The only issue presented is whether the trial court erred in denying defendant Reichhold's petition to vacate the default order and judgment under Section 72 of the Civil Practice Act (Ill Rev Stats 1963, c 110, § 72).[1]

---

[1] "§ 72. Relief from judgments and decrees.

(1) Relief from final orders, judgments and decrees, after 30 days from the entry thereof, may be had upon petition as provided

■ A motion to vacate a judgment under Section 72 of the Civil Practice Act is governed by the principle enunciated in Elfman v. Evanston Bus Co., 27 Ill2d 609, at page 613, 190 NE2d 348:

> Since our decision in Ellman v. De Ruiter, 412 Ill 285, subsequently adopted by the legislature (Laws of 1955, p 2270,) it has become certain that a petition filed under section 72, such as we have here, invokes the equitable powers of the court, as justice and fairness require, to the end that one may not enforce a default judgment attended by unfair, unjust or unconscionable circumstances.

The petition to vacate alleged that defendant had a meritorious defense, that the accident was caused solely by the negligence of Ronald F. Robinson, a co-defendant, and that defendant's failure to appear and assert a defense was without negligence.

In an affidavit filed in support of the petition, defendant Reichhold's truck driver Sterling F. Peel stated:

> I was driving north on Route 36 about 2 miles east of Winchester, Ill. and was starting up a hill when a 1959 Chevrolet passed two cars following my unit and was almost around me when the Chevrolet sideswiped a southbound car driven by Ruth

in this section. Writs of error coram nobis and coram vobis, writs of audita querela, bills of review and bills in the nature of bills of review are abolished. All relief heretofore obtainable and the grounds for said relief heretofore available, either at law or in equity, whether by any of the foregoing remedies or otherwise, shall be available in every case, by proceedings hereunder, regardless of the nature of the order, judgment or decree from which relief is sought or of the proceedings in which it was entered. There shall be no distinction among actions at law, suits in equity and other proceedings, statutory or otherwise, as to availability of relief, grounds for relief or the relief obtainable."

Stehman. . . . The force of the impact between the Robinson car and the Stehman car spun the Stehman car around and it hit the left front of my tractor.

I was almost stopped at the time I was hit. I was moving about 3 to 5 mph when hit. The Robinson car was doing 85 in my opinion . . . . the Stehman car was well within the speed limit . . . . There was no contact between my unit and the Robinson car.

There was four boys in the Robinson car and I understand they were going to a basketball game.

. . . . . .

The Illinois State Police investigated and Robinson was charged with improper passing.

The Traffic Accident Report of Trooper Ryan, filed in support of the petition, corroborated Peel's account of the accident.

Plaintiff did not deny the facts of the defense in either her answer to the petition or in the brief submitted with this appeal. Therefore, the defense must be taken as true, Dann v. Gumbiner, 29 Ill App2d 374, 379, 173 NE2d 525; Elfman v. Evanston Bus Co., 27 Ill2d 609, 610, 190 NE2d 348. We hold that the petition shows a meritorious defense to the action.

Defendant urges that since it has shown a meritorious defense, it is only fair and just under all the circumstances of the instant case to have a trial on the merits.

We will state the facts as derived from the affidavits in support of defendant's petition and the depositions of its witnesses. Defendant Reichhold was insured by Travelers Indemnity Company. Adjuster C. D. Murphy, an employee of Travelers working out of its Springfield, Illinois, office, prepared an inter-

43

office memorandum on March 23, 1961, which stated that he was informed of the accident about an hour after it occurred on March 2, 1961; that he called the Illinois State Fire Marshall to "stand by" because the insured's truck was carrying toxic chemicals; that he took a photographer with him to the scene of the accident and met with State Trooper Ryan who investigated the accident and who intimated that Reichhold's driver was not negligent; that Murphy secured the written statement from truck driver Peel and also the police report; and that he sent letters to witnesses who were listed in the police report. On March 16, 1961, Murphy communicated with Clyde Williams of Reichhold about the research done on the accident, enclosed a copy of the police report, and sent, under separate cover, the photographs of the accident scene.

On June 12, 1961, Reichhold's resident agent in Illinois, Corporation Trust Company, was served with summons and the complaint in this cause which had been filed by plaintiff on June 9. They were delivered to Albert G. Goetz, Reichhold's counsel in Detroit, Michigan. On June 14, 1961, Goetz wrote to Thomas Chester of Marsh and McLennan (Reichhold's insurance broker) enclosing the summons and complaint and requesting (1) that the papers be turned over to Reichhold's insurance carrier and (2) acknowledgment of receipt of the papers. On June 15, 1961, Chester replied that he "passed it along to our Claim Department for further action." Carmine M. Fiscina, an assistant treasurer of defendant, received a copy of the Goetz letter at his White Plains, New York, office.

On July 25, 1961, Murphy advised his superior at Travelers that "the file be held in your office or closed at this time" because Travelers had not heard from plaintiff or her attorney.

It also appears that on March 6, 1961, plaintiff's attorney requested copies of the photographs from

44

Travelers' photographer. On March 27, 1961, the photographer replied that they could not be released without Travelers' permission; that it "would appear . . . that your client . . . and Travelers . . . have [an] interest in common," and that Travelers might release a set of the photographs upon plaintiff's request. Although plaintiff had knowledge in March 1961 that defendant was insured by Travelers, she did not make a further attempt to acquire the photographs. Plaintiff made no other inquiries of defendant or Travelers.[2]

On November 27, 1963, approximately two and one-half years after the accident and service of summons, plaintiff obtained an order of default for want of appearance and answer against defendant Reichhold.

On December 3, 1963, in an ex parte hearing, a $25,000 verdict was rendered by a jury. Plaintiff did not serve the writ of execution until February 20, 1964. Travelers, immediately on learning of the situation, retained a Chicago law firm which prepared the petition to vacate, supported with exhibits and affidavits, and filed the papers with the Clerk of the Circuit Court on March 9, 1964. On March 23, 1964, depositions of Marsh and McLennan employees were taken in its New York office in an effort to ascertain

_____
[2] The March 5, 1964, affidavit of defendant's attorney stated that the matter came into the office of defendant's attorney on March 3, 1964, and:

"That he thereupon telephoned . . . counsel for plaintiff herein regarding this matter and that in the course of conversation counsel for plaintiff stated that he had at no time ever filed an attorneys' lien herein, or attempted to contact defendant or his insurers to make a claim or suggest a settlement; and that he had not advised defendant or its insurers of the ex parte hearing on damages or of the outstanding default judgment herein other than by service of complaint and summons filed herein on June 9, 1961, and by service of the writ of execution herein on February 20, 1964."

what had happened to the summons and complaint. The depositions disclosed that the complaint and summons had been received by Marsh and McLennan and that they were marked for delivery to Travelers by messenger; that there is no record or receipt in Marsh and McLennan's files showing delivery to Travelers; that ordinary mail is used on occasion; that an extensive search was made both by Travelers and Marsh and McLennan but the documents could not be traced beyond the office of Marsh and McLennan.

Plaintiff maintains that there was no showing of reasonable diligence on the part of defendant and cites several cases as authority for her conclusion. In Till v. Kara, 22 Ill App2d 502, 161 NE2d 363, the court held that defendants were not diligent on the grounds that: (1) defendants requested their own attorney to withdraw and relied on the representations of an unidentified insurance broker that the insurance company would defend them; (2) defendants made no inquiry as to the status of their case; and (3) defendants were placed on notice when no inquiry was made of them for the preparation of a defense. In Chmielewski v. Marich, 2 Ill2d 568, 119 NE2d 247, the court found that defendant's reliance on his insurance broker did not excuse his failure to appear and defend. The only circumstance considered was that defendant gave the summons to his broker who said he would take care of the matter. There is no indication that defendant apprised the broker or anyone else of any facts concerning the lawsuit. In Harder v. Advance Transportation Co., Inc., 26 Ill App2d 439, 168 NE2d 777, the court decided that no reasonable diligence was shown by the insertion of the summons and complaint in an envelope addressed to the insurance company. The court found no evidence that the case papers were mailed or that a covering letter giving information as to noninvolvement was sent to the insurer; or that

46

defendant ever made inquiry of the insurer as to whether it had received the correspondence. Plaintiff contends that Colletti v. Schrieffer's Motor Service, Inc., 38 Ill App2d 128, 186 NE2d 659, is authority for the point that "a defendant relying on insurance company for a defense should know something is amiss if his insurance company fails to inquire of the defendant about the preparation of a defense." In the instant case, however, there were extensive post-occurrence preparations in anticipation of possible litigation.

These cases predate Elfman in which the Appellate Court found that there had been inexcusable neglect in failing to present a defense. In reversing, the Supreme Court did not comment on diligence but considered all the facts and circumstances in determining that "plaintiff will gain an unconscionable advantage unless the default judgment is vacated."

■ ■ A petition under Section 72 is not a continuation of the prior proceeding.[3] Since it is addressed to the equitable powers of the court, the principles of equity apply.

■ ■ In a proceeding in equity, laches is a bar to the relief sought. In Freymark v. Handke, 415 Ill 360, at page 366, 114 NE2d 349, the court defines laches to be:

> . . . such a neglect or omission to assert a right, taken in conjunction with lapse of time of more or less duration, and *other circumstances causing prejudice to an adverse party,* as will operate as a bar in a court of equity. (Emphasis supplied.)

In the instant case plaintiff by asserting that defendant was not diligent in presenting its petition under Section 72 is in effect invoking the defense of laches. ILP, Chancery, § 115, states: "There is no absolute or

---

[3] Sec 72(2) Civil Practice Act.

47

fixed rule as to what constitutes laches, and its existence usually is determined by the facts and circumstances of each case."

Among the circumstances to be examined is the conduct of the parties to this litigation. Plaintiff commenced the suit against both defendants in June 1961. Two years later defendant Robinson filed written interrogatories and plaintiff was ordered to answer them. Upon plaintiff's wilfull failure to comply with the court orders, on November 15, 1963, plaintiff was nonsuited as to defendant Robinson.[4] Less than two weeks later, on November 27, 1963, plaintiff obtained an order of default against defendant Reichhold. Defendant was served with summons on June 12, 1961, and required to appear and answer by July 12. Although plaintiff could have obtained a default immediately thereafter, no default was taken against defendant until November 27, 1963, 28 months later. Within six days after the entry of the default, plaintiff obtained a $25,000 verdict and judgment in an ex parte hearing. Plaintiff waited nine weeks, until February 4, 1964, to have execution issued on the judgment. The execution was served on February 20, 1964. Service of an execution more than 30 days after the rendition of a judgment casts "a cloud" upon the whole proceedings "which the court should consider when appraising the merits of the petition to vacate." Dann, supra; see also, Elfman, supra.

On the other hand the facts surrounding defendant's preparations disclosed that immediately after the accident defendant's insurance company commenced an extensive investigation and forwarded to defendant

---

[4] On November 5, 1964, plaintiff filed a new suit in the Circuit Court of Cook County, 64 L 26346, solely against defendant Ronald F. Robinson.

the police report and photographs of the occurrence. After summons and complaint were served on defendant's agent in Chicago they were processed to defendant's insurance broker in New York. The defendant, after receiving a letter from its insurance broker that the papers were received and passed along to the claim department for action, and knowing the results of the investigation which showed no negligence on the part of its driver, could reasonably assume no further action was required by it.

It cannot be definitely ascertained whether the summons and complaint were lost in transit or whether they were misplaced by the insurer. It is understandable that because the information as to nonliability was overwhelming no further inquiry was made by the insurance company.

■ In light of all the circumstances, and in view of the fact that defendant had a meritorious defense and that a petition under Section 72 invokes the equitable powers of the court "as justice and fairness require," we are compelled to conclude that the petition to vacate should have been allowed. A denial of the petition would result in the enforcement of a default judgment attended by unfair or unjust circumstances, Elfman, supra. The conclusion we reach is consistent with the theme of "substantial justice," in cases arising under Section 72, a theme which has evolved in appellate decisions since Ellman v. De Ruiter, supra. It is also important to note that plaintiff is in no way prejudiced because upon reinstatement of this case she may proceed to trial against defendant Reichhold no later than if the case had reached trial by the normal route. In addition, plaintiff has a suit pending against defendant Robinson.

The judgment is reversed and set aside and the cause remanded with directions to vacate the default

■

of the defendant, to permit defendant to appear and to proceed further in such way as will not be inconsistent with this opinion.

Reversed and remanded with directions.

McCORMICK, P. J. and ENGLISH, J., concur.