NORMAN J. KUKUK *et al.*, Plaintiffs-Appellees, *v.* CHECKER TAXI COMPANY *et al.*, Defendants-Appellants.

(No. 57390;

First District (5th Division)—June 15, 1973.

*Rehearing denied July 25, 1973.*

6

Jesmer and Harris, of Chicago, (Julius Jesmer and Ronald Jay Gold, of counsel,) for appellants.

Palmer, Kipnis & Kahn, of Chicago, (Claude B. Kahn, of counsel,) for appellees.

Mr. PRESIDING JUSTICE DRUCKER delivered the opinion of the court:

Defendants appeal from an order entered on February 7, 1972, allowing plaintiffs' amended petition under section 72 of the Civil Practice

Act (Ill. Rev. Stat. 1971, ch. 110, par. 72) to vacate an order of October 13, 1971, striking plaintiff's complaint and dismissing the personal injury action against the defendants. The sole issue raised on appeal is whether the court erred in granting the petition to vacate.

On January 14, 1971, plaintiffs, through their attorneys, Irwin M. Berkley and Maxwell Leib, filed a complaint asking for damages arising out of an automobile collision between a taxicab owned by defendant, Checker Taxi Company, and driven by defendant, Hawthorne Simpson, and an automobile occupied by the plaintiffs. The defendants filed an answer and on February 26, 1971, served interrogatories to be answered by plaintiffs within 28 days. (See Ill. Rev. Stat. 1971, ch. 110A, par. 213.) Plaintiffs failed to answer the interrogatories and on April 16, 1971, the court entered an order requiring plaintiffs to answer them within 28 days. Plaintiffs again failed to answer the interrogatories and on September 10, 1971, the court entered an order again granting them 28 days within which to answer. On October 13 the plaintiffs having still failed to answer the interrogatories, an order was entered striking the complaint and dismissing the suit.

On November 22, 1971, the present counsel for plaintiffs filed a petition under section 72 requesting the vacatur of the October 13th order dismissing the suit. In relevant part the petition stated:

"3. That [this action] was originally referred by Irwin M. Berkley to Maxwell Leib and a disagreement has arisen between said attorneys; that said plaintiffs' failure to respond to letters written to them by Attorney Leib resulted in said dismissal.

4. That said Interrogatories are prepared and are ready to be filed; that said plaintiffs have a good and meritorious [sic] cause of action and would be irreparably harmed if said case were not reinstated."

An amended petition was filed on December 13, 1971, which stated:

"3. That in January, 1971, when * * * [this action] was originally filed, Maxwell Leib was an associate of Irwin Berkley, to whom the said Berkley referred various matters. This cause was originally filed by the said Maxwell Leib, who retained possession and control of said file in this matter. During April of 1971, a disagreement arose between * * * Berkley and Maxwell Leib as a result of which numerous of Berkley's files were delivered to the authorities of the Federal Government.

Although Berkley has made due and diligent efforts to reconstruct said files and to obtain the return thereof from the Federal government, he was unable to do so until subsequent to October 13, 1971.

4. That on October 21, 1971 * * * Berkley referred this matter to [present counsel] * * * for Petitioner herein.

5. That on November 10, 1971 [present counsel] Petitioner was able to obtain the file from Leib.

* * *

8. Plaintiffs did not answer interrogatories because, due to the conflict between Berkley and Leib, the plaintiffs did not respond to Leib's letters and were not fully aware of the jeopardy which they faced."

Plaintiffs filed a memorandum in support of the amended petition which stated that during April 1971 Leib came under investigation of the United States postal authorities; that Leib referred the authorities to Berkley; that in April 1971 the investigators seized numerous files of Berkley's clients; that Berkley took immediate action to have said files returned and was eventually able to secure some portions of the files involved; that on October 21, 1971, Berkley referred the matter to the present counsel for petitioners; that when said counsel learned of the dismissal they immediately, on November 11, 1971, sent notice of a motion set for November 12, 1971, to the attorneys for the defendants seeking the vacatur of the dismissal; and that on November 12 counsel for petitioner was on trial in federal court and "although diligent effort was made to appear in connection with the notice of motion, counsel was unable to be present." (As noted earlier, the initial section 72 petition was not filed until November 22, 1971.)

Counsel for defendants filed an affidavit in opposition to the petition wherein he stated that he had met with Richard Ciecka, the Assistant U.S. Attorney in charge of prosecuting Berkley; that Ciecka stated that Berkley's secretary made photocopies of Berkley's files and that access to the original files was available at all times.

After oral argument the court entered an order in which it found that "good cause was shown by the plaintiffs to grant the plaintiffs relief under Sec. 72 * * *." The order further stated that the vacatur was conditioned upon the personal payment by the attorneys for the plaintiffs in the original action and in the instant action to defendants, of attorneys' fees and costs incurred. The defendants refused to submit a schedule of fees and costs incurred and the court assessed such at $200. When this sum was deposited with the Clerk of the Circuit Court, the order vacating the dismissal was entered.

*Opinion*

■■ Defendants contend that the court erroneously granted the petition to vacate. A petition under section 72 is a new action, *i.e.*, it is not a continuation of the prior proceeding. (Ill. Rev. Stat. 1971, ch. 110,

par. 72(2).) Like all other civil cases, the petition must state a good cause of action. Here, such would consist of, in part, factual allegations showing that the dismissal order was not entered because of the lack of due diligence of plaintiffs. Defendants argue that plaintiffs failed to allege facts showing the presence of due diligence. We agree.

In *Danforth v. Checker Taxi Co., Inc.*, 114 Ill.App.2d 471, 253 N.E.2d 114, which we deem is controlling here, plaintiff filed suit against the defendant on February 20, 1967. The defendant filed its answer and on March 27, 1967, served plaintiff with interrogatories. Plaintiff failed to answer or object to the interrogatories within 28 days and on April 27, 1967, defendant served plaintiff with notice that the answers were overdue. Defendant then moved to dismiss the complaint and on August 4, 1967, the court entered an order requiring the interrogatories to be answered on or before September 1, 1967. Plaintiff still did not answer and on September 26, 1967, the court entered an order requiring answers to be filed by October 24, 1967. Plaintiff again failed to comply and on October 25, 1967, the court dismissed the suit. Plaintiff herself received only one notice of the foregoing events, and the remaining notices were sent to her attorney. In reversing the trial court's order which granted the section 72 petition, the court stated at 475-476:

> "To have a case tried on its merits is, of course, the desirable goal, but we must also have rules relating to procedure and even statutes of limitation. Courts are reluctant to dismiss suits for failure to comply with procedural rules and court orders intended to enforce them, but there are circumstances under which that must be done or the whole system will bog down. That which would best serve the interests of the dilatory party is not the only factor to be considered. The argument that fundamental fairness demands a trial on the merits might be persuasive if urged in the trial court before the expiration of the thirty day period, the current substitute for term time.
>
> Disregard for procedural rules intended to expedite the disposition of litigation can only contribute to the problem those rules were designed to ameliorate. Considering the enormous backlog of cases confronting our courts, due primarily to the vast increase of personal injury litigation, we cannot be indifferent to procedural rules such as those here involved. A general understanding that section 72 was always available for relief regardless of neglect in failing to comply with court orders would add to the case load and penalize those who obey the court's orders by subjecting them to further delay."

See *Till v. Kara*, 22 Ill.App.2d 502, 508, 161 N.E.2d 363.

■■ In the instant case plaintiffs' attorneys in the original action repeatedly failed to comply with defendants' requests to answer or object to the interrogatories as required by the Supreme Court Rules and by court order. Present counsel for the plaintiffs argue that plaintiffs should not lose their right to pursue their tort action to a final judgment on the merits due to the inaction of and the difficulties experienced by their attorneys. They correctly note that a petition under section 72 is directed to the equitable powers of the court. See *Elfman v. Evanston Bus Co.*, 27 Ill.2d 609, 190 N.E.2d 348.

■■ If the petition and amended petition alleged only acts of neglect on the part of the attorneys for plaintiffs in the initial action, we might be persuaded by this argument. However, both the initial and amended petition alleged that part of the reason for the continuous failure to respond to the interrogatories was the failure of the plaintiffs themselves to respond to letters from their attorney. We conclude that this fact when coupled with the repeated failures of plaintiffs' counsel to make appropriate responses to defendants' requests formed an insufficient basis upon which the court could properly vacate the default judgment of October 13, 1971.

■■ Our conclusion gains support from the fact that the court conditioned the vacatur on the payment of $200 costs (incurred by defendants in the initial proceeding) by plaintiffs' attorneys personally to defendants. This condition implicitly indicates that the court felt that plaintiffs' attorneys, at least, had not acted with due diligence in attempting to avoid the entry of the default judgment and certainly tends to contradict the court's finding that "good cause was shown by the plaintiffs to grant the plaintiffs relief under section 72 * * *."

■■ The requirement of showing "due diligence" by the party seeking relief under section 72 seems to have been abrogated in some cases where equity and good conscience require it. (See *Burkitt v. Downy*, 102 Ill.App.2d 373, 242 N.E.2d 901; *Business Assets Corporation v. Kors*, 11 Ill.App.3d 52, 295 N.E.2d 535 (abst.).) But any such abrogation must be determined on a case by case basis. Here we feel it would be inappropriate.

■■ The cases cited by plaintiffs are not on point. (*Gillespie v. Norfolk & Western Ry. Co.*, 103 Ill.App.2d 449, 243 N.E.2d 27; *Schwartz v. Moats*, 3 Ill.App.3d 596, 277 N.E.2d 529; *Gray v. Yellow Cab Co.*, 1 Ill. App. 3d 984, 273 N.E.2d 703; *Smith v. Pappas*, 112 Ill.App.2d 129, 251 N.E.2d 390.) *Gillespie, Schwartz* and *Gray* were not section 72 actions but were actions to vacate default judgments within 30 days of their entry, i.e., while the courts still retained jurisdiction over the initial cause. (Compare *Danforth* at 476; *Johnson v. Chicago & Western In-*

*diana R.R. Co.,* (First Dist. No. 56911), (Ill.App.3d), (N.E.2d).) *Smith* is factually inapposite since there the failure of plaintiff's counsel to appear at a hearing on defendant's motion to dismiss for failure of plaintiff to answer interrogatories was due to a previously arranged agreement by counsel for the parties.

■■ In closing, we note that the imposition of $200 costs on plaintiffs' attorneys personally as a condition of reinstatement was error. The sanction in question was for costs incurred by defendants due to violations of the discovery rules in the original action (see Ill. Rev. Stat. 1971, ch. 110A, par. 219(c)(vi)) and not the section 72 proceeding which as noted earlier is separate and distinct from the original action. Such sanctions might have been imposed in the original proceeding for the violation of discovery rules while that suit was still pending in the jurisdiction of that court, but we find no authority for their imposition in this section 72 proceeding.

The order of February 7, 1972, vacating the dismissal of this cause is reversed and the cause remanded with directions to deny plaintiffs' section 72 petition and to require the clerk of the circuit court to return the $200 to the depositors thereof.

Reversed and remanded with directions.

ENGLISH and LORENZ, JJ., concur.